UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHAWNA BROWN, et al., | Case No. 2:13-cv-01007-KJM-KJN |
| Plaintiffs, | |
| v. | ORDER |
| WESLEY GRINDER, et al., | |
| Defendants. | |

Following the final pretrial conference and prior to the parties' settlement conference, the court resolves the following three motions in limine filed by plaintiffs. *See* ECF No. 93 at 10 (final pretrial order advising the parties the court would resolve motions in limine, if possible, to facilitate settlement discussions).

I. NATURE OF RULINGS ON IN LIMINE MOTIONS

The court issues its rulings on motions in limine based on the record currently before the court. Each ruling is made without prejudice and is subject to proper renewal, in whole or in part, during trial. If a party wishes to contest a pre-trial ruling, it must do so through a proper motion or objection, or otherwise forfeit appeal on such grounds. *See* Fed. R. Evid. 103(a); *United States v. Whittemore*, 776 F.3d 1074, 1082 (9th Cir. 2015), *cert. denied*, 136 S. Ct. 89 (2015)

1

("Where a district court makes a tentative *in limine* ruling excluding evidence, the exclusion of that evidence may only be challenged on appeal if the aggrieved party attempts to offer such evidence at trial, which allows the court to make a final ruling.") (citation and internal quotation marks omitted).

II.   PLAINTIFFS' MOTIONS IN LIMINE

    A.   Motion in Limine One

Plaintiffs move to bifurcate the liability and damages phases of this trial, arguing "[i]t is an abuse of discretion . . . to permit the liability component of this trial to be tainted by information unknown to Defendant officers." MIL 1, ECF No. 94, at 5. Defendants argue that plaintiffs' bifurcation motion is a veiled "attempt[] to keep out relevant evidence that is critical to evaluating what a reasonable officer would have done in the same or similar situation, which is essential in assessing liability." Opp'n MIL 1, ECF No. 98, at 2.

Under Rule 42(b), "[f]or convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues[ or] claims . . . ." Fed. R. Civ. P. 42(b). "The separation of issues of liability from those relating to damages is an obvious use for Federal Rule 42(b)." C. Wright, et al., 9A Fed. Prac. & Proc. Civ. § 2390 (3d ed.). A trial court exercises its discretion in determining whether bifurcation is appropriate, and reversal is warranted only if "the reviewed decision lies beyond the pale of reasonable justification under the circumstances." *Estate of Diaz v. City of Anaheim*, 840 F.3d 592, 601 (9th Cir. 2016) (quoting *Harman v. Apfel*, 211 F.3d 1172, 1175 (9th Cir. 2000)).

Bifurcation is often necessary where evidence relevant to damages is of little relevance to liability but poses a significant risk of prejudice if presented before the jury makes a liability determination. *Id.* at 603 ("[W]here . . . graphic and prejudicial evidence about the victim has little, and in large part no, relevance to the liability issue, district courts should bifurcate [liability and damages phases of trials].") (footnote omitted). Plaintiffs argue the court is presented with such a case here but have not identified any evidence relevant to damages but irrelevant to liability. For example, the parties take opposing views on whether Brown's alleged gang membership and probation status are relevant to the liability phase, discussed in further detail

2

below, but neither party attempts to show such evidence is relevant to damages. *See* MIL 1 at 5 (arguing "there may be a basis to admit some such evidence for purposes of assessing damages," without explaining the bases, if any, for admission in the damages phase); MIL 1 Opp'n at 3 (arguing "[t]he liability and damages components of this case are inextricably intertwined" without explaining how any evidence is relevant to damages). Notably, plaintiffs do not argue bifurcation is necessary to prevent undue prejudice in the damages phase that may result from evidence presented in the liability phase. Such an argument would presumably require plaintiffs to request the court empanel two juries for the two phases, a substantial use of judicial resources and citizen jurors' time that plaintiffs have not shown is warranted on this record. *See Michael Kors, L.L.C. v. Chunma USA, Inc.*, No. CV 16-01271-AB (AFM), 2017 WL 5665003, at *2 (C.D. Cal. Aug. 30, 2017) (noting it is possible to bifurcate issues into phases before the same jury and also possible to empanel separate juries to hear bifurcated issues).

Plaintiffs have not shown bifurcation is necessary "[f]or convenience, to avoid prejudice, or to expedite and economize" the proceedings. *See* Fed. R. Civ. P. 42(b). The motion is DENIED.

      B.    <u>Motion in Limine Two</u>

Plaintiffs move to exclude evidence they deem irrelevant and prejudicial. MIL 2, ECF No. 95. This includes the following evidence unknown to defendants during the incident but discovered by the Officer Involved Shooting investigative team's search of Brown's car following the fatal shooting: "$1950 in cash (found in the center console of the car), a clear plastic baggie containing pills and apparent rock cocaine (found in the console cup holder), and mason's [sic] jar with suspected marijuana (found in a black backpack on the right rear passenger seat) . . . ." *Id.* at 2. It also includes the results of Brown's autopsy, identifying "[t]wo tattoos of [Brown's] wife's name 'Shawna'; a tattoo of a figure of a man holding a handgun, a bag of money, and wearing a ski mask; a tattoo of the word 'Champ', [sic] boxing gloves, money, and a dog face; a tattoo of the words 'Crow Valley,' a crow's head, and '209 Hustla'; and a tattoo of a picture of cash (U.S. currency) and the word 'Boss.'" *Id.* Plaintiffs also argue the court should exclude Grinder's knowledge that Brown was on searchable probation for "something domestic," based on Brown's

admission, and move to exclude Grinder's identification of Brown as a gang affiliate, gleaned from a law enforcement database during the traffic stop before Brown ran from the officers. *Id.* at 2−3. Finally, plaintiffs argue that the results of Brown's toxicology report, drug use and criminal history should be excluded. *Id.* at 3−4.

Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence" and that "fact is of consequence in determining the action." Fed. R. Evid. 401. Only relevant evidence is admissible. Fed. R. Evid. 402. In an excessive force claim, the controlling inquiry under the Fourth Amendment is "whether the officers' actions are 'objectively reasonable' in light of the facts and circumstances confronting them, without regard to their underlying intent or motivation." *Graham v. Connor*, 490 U.S. 386, 397 (1989); *Watson v. City of San Jose (San Jose Police Dep't)*, No. 17-17515, 2019 WL 1386320, at *1 (9th Cir. Mar. 27, 2019) (noting *Graham* prohibits considering "facts unknown to the officers at the time" in "analyzing the objective reasonableness of the officers' conduct" while "[i]nformation actually known or observed by officers at the time of the incident is relevant to the use of force calculation") (citations omitted). Because neither officer was aware of the items in Brown's car, his tattoos, his criminal history -- with the possible exception of Grinder's knowledge of "something domestic" in Brown's past --, or Brown's toxicology report at the time of the incident, the court reviews the motion as to that evidence first.

    1.    <u>Items from Brown's Car, His Tattoos, Criminal History & Toxicology Report</u>

On the current record, the court finds that this evidence is not relevant to plaintiffs' excessive force claim. Defendants concede the officers were not "aware of [Brown's] exact criminal history, the illicit drugs later found in [Brown's] car, [his] history of drug use, or [his purported] current state of intoxication."[1] MIL 2 Opp'n, ECF No. 100, at 2. While defendants do not expressly admit they were unaware of Brown's tattoos, they appear to concede as much by

---

[1] Plaintiffs dispute the latter claim, noting "[n]o evidence or expert testimony has established that Mr. Brown was under the influence of any drug or alcohol during this incident" though Brown may have "smoked pot sometime in the weeks before this incident." MIL 2 Reply, ECF No. 103, at 2. Because defendants have not identified any portion of the record supporting their assertion that Brown was intoxicated at the time of the incident, the court disregards this assertion.

4

failing to dispute the point. *See id.* at 4; *see also* MIL 1 Opp'n at 3 (arguing Brown's purported gang affiliation "was later found to be consistent with tattoos discovered at the decedent's autopsy"). Defendants argue, however, this evidence is admissible under *Graham* because it provides insight into "the rationale behind why [Brown] resisted and attempted to flee . . . ." MIL 2 Opp'n at 4; *see id.* (arguing this evidence is "absolutely relevant to the decedent's current mental state and motivation for assaulting Tairiol and Grinder"[2]).

The court disagrees. By their own admission, none of the evidence in this category was known to defendants before Brown was shot dead. Putting that issue aside, defendants' arguments rely on speculation that a suspect who knows he is in possession of illicit drugs, used drugs in the past, committed crimes in the past or has tattoos that may be identified as gang tattoos has a motive to violently resist arrest. Defendants' speculation does not warrant admission of this highly prejudicial evidence, which appears to amount to little more than character evidence. *See Valtierra v. City of Los Angeles*, 99 F. Supp. 3d 1190, 1194 (C.D. Cal. 2015) (rejecting as "pure conjecture" defendants' argument that decedent's criminal history, including a deferred entry of judgment pending against him, supported motive to avoid arrest).

To the extent this evidence could be probative of Brown's intent or motive to aggressively resist arrest, its probity is substantially outweighed by its danger of unfair prejudice, warranting exclusion. *See* Fed. R. Evid. 403. Although Rule 404(b) is a rule of inclusion, *Boyd v. City and Cty. of San Francisco*, 576 F.3d 938, 947 (9th Cir. 2009) (citation and quotation marks excluded), the evidence proffered here falls within Rule 403's "major function . . . of excluding matter of scant or cumulative probative force, dragged in by the heels for the sake of its prejudicial effect." *See United States v. Haischer*, 780 F.3d 1277, 1281−82 (9th Cir. 2015) (quoting *United States v. Hankey*, 203 F.3d 1160, 1172 (9th Cir. 2000)); *Castro v. Cty. of Los Angeles*, No. 213CV06631CASSSX, 2015 WL 4694070, at *3 (C.D. Cal. Aug. 3, 2015) (finding because "decedent's flight is not disputed, and decedent's motive for fleeing is not a fact of consequence in determining the instant action[,]" evidence of the decedent's criminal record presented a "risk that

---

[2] Although both parties use all capital letters in providing Taiariol and Grinder's names, the court does not adopt that convention here.

such evidence could lead a jury to find in favor of defendants because decedent was a 'bad guy,' not because [the officer's] use of force was objectively reasonable"). A limiting instruction would not cure the risks here. The motion is GRANTED.

### 3. Brown's Probation Status & Alleged Gang Affiliation

It is undisputed Brown informed Grinder he was on searchable probation for, as Grinder recalls, "something domestic," and that Grinder confirmed Brown's probation status after running his name through a law enforcement database. MIL 2 at 2 (citing Grinder deposition testimony). It is also undisputed that when Grinder ran Brown's name through a law enforcement database during the initial stop before Brown fled, he learned that Brown was affiliated with "CVB," which Grinder understood referred to a local gang known as "Crow Valley," though he did not know what the "B" referred to.[3] Grinder Dep. at 79:2−21. Less clear is whether Taiariol was aware of Brown's probation status, as he testified, "I heard the word probation, and I heard search, but I didn't know basically everything that was being said." Tairiol Dep. at 34:6−7; *see* MIL 2 Opp'n at 2 (citing Taiariol Deposition). Also, as plaintiffs note, and defendants do not dispute, nothing in the record before the court establishes that Brown was in fact a member of any gang or, if he had been in the past, that he remained a gang member at the time of the incident at issue here. MIL 2 at 2.

On this record and at this juncture, the court finds Grinder's knowledge Brown was on probation and had been identified as a potential gang member forms part of the facts and circumstances known to Grinder during the incident and thus may bear on whether his use of force was objectively reasonable. *See Watson*, 2019 WL 1386320, at *1 ("Information actually known or observed by officers at the time of the incident is relevant to the use of force calculation under *Graham*."); *Ruvalcaba v. City of Los Angeles*, 64 F.3d 1323, 1328 (9th Cir. 1995) (finding district court did not err in allowing "police officers to testify in a limited manner about their prior contacts with [plaintiff]" because "testimony was relevant to establish the facts and circumstances known to the officers during their confrontation with [plaintiff]"); *Estate of Lopez by Lopez v. City of San*

---

[3] Grinder indicated that he later learned the "B" stands for "Bloods." Grinder Dep. at 79:20−23.

*Diego, Kristopher Walb*, No. 13-CV-2240-GPC-MDD, 2018 WL 620089, at *7 (S.D. Cal. Jan. 30, 2018) ("Defendants' reference to Lopez's gang membership is permissible because it constituted part of the knowledge that Officer Walb had in his state of mind at the time of the shooting.").

The court notes the facts here differ significantly from the facts in *Ruvalcaba*, where the officer "was familiar with [plaintiff] from a variety of prior contacts" and "[d]ue to this familiarity, he anticipated the possibility of danger in stopping the vehicle," justifying his "limited" testimony as to his prior experiences with plaintiff. 64 F.3d at 1325, 1328. Similarly, in *Lopez*, the shooting officer was a member of a SWAT team and had been expressly informed that the decedent "was a documented gang member with a prior weapons history and was always known to carry a handgun." *Estate of Lopez*, 2018 WL 620089, at *2. Here, in contrast, Grinder was aware only that Brown was on probation for an unidentified incident, though possibly "something domestic," and knew only that Brown had been identified as a gang affiliate without, apparently, any indication of the depth of Brown's involvement or his current status. Defendants do not argue the import of this evidence to a reasonable officer, but instead simply argue this evidence was known to Grinder and made Brown more likely to violently resist arrest.

The court thus expresses some reservation as to the probity of this evidence and its potential undue prejudice to plaintiffs. *See* MIL 2 at 5−6 (arguing evidence is prejudicial and constitutes character evidence); *United States v. Arias*, 714 F. App'x 804, 805 (9th Cir.), *cert. denied*, 139 S. Ct. 145 (2018) ("[G]ang affiliation evidence carries a significant risk of unfair prejudice.") (citing *Estate of Diaz*, 840 F.3d at 602; *Kennedy v. Lockyer*, 379 F.3d 1041, 1055-56 (9th Cir. 2004)). Unless the court revisits this issue, the evidence allowed will be limited to Grinder's testimony as to the information known to him before Brown ran and likely will be accompanied by a limiting instruction.[4] Defendants will not be permitted to argue that because Brown was on probation or potentially was a gang member, he was more likely to engage in criminal or violent conduct; they may not speculate or encourage the jury to speculate as to the basis for Brown's probationary status; they may not present Brown's alleged gang membership as

---

[4] The parties are invited to propose a final limiting instruction as well.

a fact when there is no evidence it rises above an allegation documented in a law enforcement database. Any such argument risks a mini-trial on Brown's criminal history, if any, and his prior or active gang membership, if any, and invites impermissible character inferences and the risk of prejudice that substantially outweighs the probative value of the evidence. *See* Fed. R. Evid. 403. Accordingly, with this clarification, the court DENIES this portion of plaintiff's motion.

The court GRANTS plaintiffs' motion insofar as defendants intend to use Brown's probation status or alleged gang affiliation to argue he was more likely to act violently against officers, or for any other impermissible character purpose. *See Galindo v. Tassio*, No. C13-00105 HRL, 2014 WL 12693525, at *1 (N.D. Cal. June 19, 2014) (granting motion to exclude evidence of decedent's gang affiliation as purportedly "relevant to whether [decedent] reached for the gun and pointed it at [the officer]," because "its probative value is marginal at best and is substantially outweighed by the risk that the jury draws impermissible character inferences, is misled from the more critical issues in the case, and attaches 'guilt by association' to [decedent]"); *Valtierra*, 99 F. Supp. 3d at 1194 n.1 (defendants' argument that deferred entry of judgment made defendant more likely to violently avoid arrest was "pure conjecture").

### C. Motion in Limine Three

In their expert witness disclosures and again in their final pretrial statement, defendants identify defendant Taiariol as a non-retained expert, stating: "Officer Taiariol is a post-certified defensive tactics/use of force instructor. Officer Taiariol will testify regarding the Stockton Police Department's defensive tactics training, arrest procedures, and defense tactics utilized in Mr. Brown's arrest." Expert Witness Disclosures, ECF No. 62, at 2; Joint Pretrial Statement, ECF No. 90, at 28.

Plaintiffs move to preclude Taiariol from providing any such testimony, arguing Taiariol neither produced an expert report under Rule 26(a)(2)(B),[5] as required in the court's

---

[5] Under Rule 26(a)(2)(B),

> Unless otherwise stipulated or ordered by the court, [] disclosure [of expert testimony] must be accompanied by a written report--prepared and signed by the witness--if the witness is one retained or specially employed to provide expert testimony in the case or one whose duties

8

pretrial scheduling order, nor disclosed his specific opinions or bases for his opinions under Rule 26(a)(2)(C);[6] expressing concern Taiariol will merely testify that his and Grinder's conduct "was perfectly fine within policy, training and law, which would raise all kinds of *Daubert* issues"; and arguing plaintiffs would be entitled to re-depose Taiariol after he identifies the opinions he intends to offer. MIL 3, ECF No. 96 at 3−4.[7]

Defendants oppose, arguing Tairiol is not required to provide a written report under Rule 26(a)(2)(B) and they have satisfied Rule 26(a)(2)(C)'s requirements by disclosing the subject matter on which he intends to provide expert testimony and a summary of the facts and opinions to which he expects to testify. MIL 3 Opp'n, ECF No. 99.

The court need not determine whether the scheduling order required Taiariol to produce a written report because the court finds defendants' disclosure does not satisfy Rule 26(a)(2)(C)'s lesser requirement of "a summary of the facts and opinions to which the witness is expected to testify." Fed. R. Civ. P. 26(a)(2)(C)(ii). Disclosure under Rule 26(a)(2)(C) "is considerably less extensive than the report required by Rule 26(a)(2)(B)" and requires "[c]ourts [to] take care against requiring undue detail, keeping in mind that these witnesses have not been

---

as the party's employee regularly involve giving expert testimony. The report must contain: (i) a complete statement of all opinions the witness will express and the basis and reasons for them; (ii) the facts or data considered by the witness in forming them; (iii) any exhibits that will be used to summarize or support them; (iv) the witness's qualifications, including a list of all publications authored in the previous 10 years; (v) a list of all other cases in which, during the previous 4 years, the witness testified as an expert at trial or by deposition; and (vi) a statement of the compensation to be paid for the study and testimony in the case.

[6] Rule 26(a)(2)(C) provides:

Unless otherwise stipulated or ordered by the court, if the witness is not required to provide a written report, this disclosure must state: (i) the subject matter on which the witness is expected to present evidence under Federal Rule of Evidence 702, 703, or 705; and (ii) a summary of the facts and opinions to which the witness is expected to testify.

[7] Plaintiffs also move to exclude Grinder from providing expert testimony, but there is no indication he intends to do so.

9

specially retained and may not be as responsive to counsel as those who have."[8] Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment. Even so, defendants' disclosure provides no indication whatsoever of the "opinions" Tairiol will testify to, instead addressing only the broad subject matter of his testimony. *See* Expert Witness Disclosures at 2 ("Officer Taiariol will testify regarding the Stockton Police Department's defense tactics training, arrest procedures, and defensive tactics utilized in Mr. Brown's arrest."); *see also Lambert v. Liberty Mut. Fire Ins. Co.*, No. 2:14-CV-00521 JWS, 2016 WL 3193252, at *2 (D. Ariz. June 9, 2016) ("[The] general statement that each [medical] provider will provide expert testimony about injuries, causation, and the impact of benefit denial on Plaintiff's health, final prognosis, and future earning potential [was] wholly devoid of any 'summary of the facts and opinions' required under Rule 26(a)(2)(C)."); *Bravo v. City of Santa Maria*, No. CV 06-6851 FMO (SHX), 2013 WL 12224037, at *11 (C.D. Cal. July 1, 2013) (finding no "meaningful summary" where "[p]laintiffs' expert designation lists each of the experts and then includes a one sentence, broad description of the subject matter and does not include any specific information with regard to facts and opinions.").

Because the parties briefed this motion without citing a single case, it is perhaps unsurprising that neither party notes that "[w]hen a party fails to make the disclosures required by Rule 26(a), the party is not allowed to use the witness to supply evidence at trial unless it establishes that the failure was substantially justified or is harmless." *Goodman v. Staples The Office Superstore*, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (citations omitted). Defendants make no attempt to show they meet this standard. *See* MIL 2 Opp'n. Further, discovery has closed and will not be reopened to allow defendants to clarify Taiariol's opinions and allow plaintiffs to investigate and respond, if clarified. *See Sanchez v. California*, No. 1:12-CV-01835-SAB, 2015 WL 2185186, at *9 (E.D. Cal. May 8, 2015) ("Since Plaintiff did not provide the substance of the witnesses' testimony so that Defendants could inquire into the substance of their opinions by deposition during the discovery period, Defendant cannot cure the prejudice.").

---

[8] In the case law on this issue, the non-retained expert is often a treating physician. Here, because the purported non-retained expert is a defendant, the rationale that he "may not be as responsive to counsel as [retained experts]" carries significantly less force. *See* Fed. R. Civ. P. 26 advisory committee's note to 2010 amendment.

The court notes that plaintiffs move only to prevent Taiariol from testifying as an expert rather than seeking to bar his testimony entirely. That motion is GRANTED.

III. CONCLUSION

The court denies plaintiffs' first motion in limine, grants in part and denies in part plaintiffs' second motion in limine, and grants plaintiffs' third motion in limine, all as set forth above. These rulings are without prejudice and may be renewed, subject to Federal Rule of Civil Procedure 11.

IT IS SO ORDERED.

DATED: June 3, 2019.

_____
UNITED STATES DISTRICT JUDGE